# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

PALATIUMCARE, INC.,

                    Plaintiff,

v.

NOTIFY LLC and LUCAS
NARBATOVICS,

                    Defendants.

Case No. 22-CV-217-JPS

**ORDER**

## 1.      INTRODUCTION

Plaintiff PalatiumCare, Inc. ("PalCare") provides "technology infrastructure related to emergency call systems for senior living facilities," and in this action alleges that Defendants Notify LLC ("Notify") and Lucas Narbatovics ("Narbatovics") (together, "Defendants") infringed PalCare's copyrights on two works of source code—Pal Base 3 Version 3.1.50 and Device Test Suite (together, the "Source Codes")—used in that technology by accessing the Source Codes and using them to develop a competing product. ECF No. 1. Defendants respond by alleging, among other things, that PalCare's copyrights on the Source Codes were invalid. ECF No. 10.

On February 10, 2023,[1] Defendants filed a motion asking the Court, pursuant to 17 U.S.C. § 411(b)(2), to request that the Register of Copyrights

---

[1]Defendants submitted their motion less than a month before the originally-scheduled trial date of March 6, 2023. At the Final Pretrial Conference on February 28, 2023, the Court cancelled the trial date in light of the number of outstanding issues, including the matter of referral to the Register of Copyrights, that needed to be addressed before trial. ECF No. 79. The trial date has not yet been reset.

("Register") render an opinion on whether alleged inaccuracies in PalCare's copyright registration applications for the Source Codes would have caused the Register to refuse to register those copyrights. ECF No. 35. The motion is fully briefed. ECF Nos. 36, 68, 81.[2] Additionally, Plaintiff moved for leave to file a sur-reply, and attached a proposed sur-reply, ECF Nos. 91 and 91-1; Defendants oppose that motion, ECF No. 93. For the reasons stated herein, Defendants' 17 U.S.C. § 411(b)(2) motion will be granted in part and denied in part, and the Court will refer this matter to the Register of Copyrights for an opinion on the two questions framed below. Plaintiff's motion for leave to file a sur-reply will also be granted, and the Court has considered the sur-reply in reaching its conclusion.

## 2.     APPLICABLE LEGAL STANDARD

"[T]he Copyright Act provides for the invalidation of registrations where the registrant knowingly misrepresented information in his application and 'the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration.'" *DeliverMed Holdings, LLC v. Schaltenbrand*, 734 F.3d 616, 623 (7th Cir. 2013) (quoting 17 U.S.C. § 411(b)(1)(A)–(B)). "In any case in which inaccurate information described under paragraph (1) is alleged, the court shall request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration." 17 U.S.C. § 411(b)(2). Under this relatively recent amendment to the Copyright Act, "courts confronted with a registration

---

[2] Defendants' reply brief, ECF No. 81, was filed in redacted form, with an unredacted version filed at ECF No. 85-1 and subject to an unopposed motion to restrict, ECF No. 85. The motion to restrict will be granted as to the unredacted reply brief and the additional attached deposition transcript. The Court will cite to the redacted and publicly-available version of the reply brief.

allegedly obtained by knowing misstatements in an application" for registration of a copyright are "obligate[d] to obtain an opinion from the Register on the matter" rather than "relying solely on the court's own assessment" of the relevant party's representations to the Register and how the Register might have responded. *DeliverMed Holdings*, 734 F.3d at 623 (citing and discussing 17 U.S.C. § 411(b)(2)).

The parties contest what evidentiary showing, beyond allegations, the movant must make before the district court's referral obligation under § 411(b)(2) applies. ECF Nos. 36 at 5, 68 at 2–3, n.1, and 81 at 2–4. Although in *DeliverMed Holdings* the Seventh Circuit noted the "obvious potential for abuse" of this referral mechanism and the "risk that parties would use this provision as a delay tactic," it also cautioned district courts against granting relief in a copyright case "without following the statutorily mandated procedure." 734 F.3d at 624–25. Balancing these competing considerations—docket management and fairness to litigants versus Congress's mandate that district courts defer to the Register's expertise— the Seventh Circuit stated that "courts *can* demand that the party seeking invalidation first establish that the other preconditions to invalidity are satisfied before obtaining the Register's advice on materiality." *Id.* at 625 (emphasis added).

Defendants' proffered case, *HealtheState, LLC v. United States*, does indeed criticize *DeliverMed Holdings* for "requir[ing] the movant to demonstrate that the inaccurate information was knowingly provided" when the statutory language refers only to allegations. 160 Fed. Cl. 91, 95 (2022) ("If Congress intended the referral procedure to be used only where a party first proves the statutory criteria, it would have said so."). However, that case still acknowledges that something more than "a bare,

unsubstantiated allegation" of an inaccuracy on a copyright registration application is required before a referral will be ordered. *Id.* at 95–96. So it appears that *HealtheState* and *DeliverMed Holdings* are not entirely at odds with respect to the burden they place on a § 411(b)(2) referral movant. Moreover, the language in the controlling authority reads more like firm guidance than a bright-line rule. *DeliverMed Holdings*, 734 F.3d at 625 (stating that "courts *can* demand" and that "a litigant *should* demonstrate" a certain evidentiary showing (emphasis added)).

Accordingly, the Court will consider whether Defendants have put forth factual material that tends to support that PalCare knowingly included inaccurate information on its registrations for the Source Code, and will also take into account the delay-tactic factor noted above. The Court is guided by the Seventh Circuit's instruction that the overall goal of the referral mechanism is to "ensure that no court holds that a certificate is invalid due to what it considers to be a misstatement on an application without first obtaining the input of the Register." *Id.* at 623–24 (quoting Response of the Register of Copyrights to Request Pursuant to 17 U.S.C. § 411(b)(2) at 10–11, *Olem Shoe Corp. v. Wash. Shoe Co.,* No. 1:09–cv–23494 (S.D. Fla. Oct. 14, 2010)).

### 3. ANALYSIS OF ALLEGED INACCURACIES

Defendants allege that PalCare knowingly included the following three inaccuracies in its applications for copyright registration of one or both components of the Source Code:

1. That PalCare used preexisting and/or open source code in developing the Source Code but failed to disclose to the Register that the Source Code was not completely original work;

Case 2:22-cv-00217-JPS   Filed 04/13/23   Page 4 of 23   Document 95

2. That three individuals participated in developing the Source Code and should have been listed as authors of the Source Code, but PalCare listed only itself as the author; and

3. That PalCare misidentified the date of publication of the Pal Base 3 Version 3.1.50 source code.

PalCare opposes Defendants' motion, arguing that the factual record in this case shows that these alleged inaccuracies were not inaccuracies at all, or that Defendants mischaracterize what information PalCare was legally obligated to include in its applications.

The Court examines each alleged inaccuracy in turn and finds that Defendants have met their burden and sufficiently alleged the first- and second-listed inaccuracies in PalCare's copyright registration applications to warrant referral of this matter to the Register for further assessment. Defendants' motion for referral to the Register will therefore be granted in part as to those two issues. Because PalCare's arguments for why it is entitled to file a sur-reply are bound up in the facts related to each alleged inaccuracy, the Court addresses those arguments in turn as well, concluding that PalCare was entitled to file its proposed sur-reply.

### 3.1    Inclusion of Preexisting Works

Defendants first argue that PalCare was obligated, under 17 U.S.C. § 409(9), to identify in its applications for copyright registration any preexisting works its Source Code was based on or incorporated. ECF No. 36 at 6; *see also* 17 U.S.C. § 409(9) ("The application for copyright registration . . . shall include[,] . . . in the case of a compilation or derivative work, an identification of any preexisting work or works that it is based on or incorporates[.]"). Defendants further allege—citing PalCare's interrogatory responses—that the Source Code was developed using preexisting open

Case 2:22-cv-00217-JPS   Filed 04/13/23   Page 5 of 23   Document 95

source[3] code and that PalCare knew this but failed to disclose it on its applications. ECF No. 36 at 6–8.

PalCare counters by pointing out that Defendants' opening brief did not actually identify what, if any, open source code appeared in the Source Code. ECF No. 68 at 3. Moreover, PalCare argues, any amount of open source code actually used in development was minimal to begin with, as one of the primary developers, Tod Geimer, testified in his deposition:

> Q. I guess if we just think more broadly now to the Pal Base 3 code, are you able to provide an estimate of the amount of code that was originally written by individuals at PalCare as

---

[3]Defendants define this term as follows: "[o]pen source code is code purposely put in the public domain by its author(s), and published (usually on the internet) such that anyone can view it, copy it, learn from it, alter it, or share it." ECF No. 36 at 7. This characterization appears to inaccurately conflate "public domain" with "open license."

"So called 'open source' software makes its source code available with an open license in which the copyright holder provides the rights to study, change, and distribute the software to anyone and for any purpose . . . ." 58 James L. Buchwalter, Causes of Action 2d 227, § 25. "Open source software licenses require that . . . an author attribution be included in a program or in documentation that uses open source." *Id.* One court has found that

> [a] copyright holder stated a prima facie case of copyright infringement on allegations that he held a copyright for certain materials distributed through his Internet website pursuant to an open source computer software license, and the competitor copied, modified, and distributed portions of the software as part of the other software in violation of the open source license.

*Id.* (citing *Jacobsen v. Katzer*, 535 F.3d 1373 (Fed. Cir. 2008)). Another commentator has noted that "[d]evelopers of [open source] works could simply release their programs into the public domain in order to create a robust collection of freely available software for everyone's use. . . . [but instead] utilize a combination of copyright law and a special licensing structure in order to guarantee that users maintain the freedom to get the maximum benefit from a work of software." Donald R. Robertson, III, *An Open Definition: Derivative Works of Software and the Free and Open Source Movement*, 42 New. Eng. L. Rev. 339, 344 (2008).

opposed to portions of the code that, you know, you took from open source code and modified?

A. For me I can. Not for Terry and Tim [two other developers at PalCare].

Q. Sure. That's fair.

A. Very little. Probably less than 1 percent.

*Id.* at 4 (quoting ECF No. 69-1 at 14 (Geimer deposition excerpts)). Additionally, according to Geimer, the less than 1% of open source code that *was* used during the development process was itself significantly modified. *Id.* Therefore, in PalCare's estimation, the Source Code did not incorporate enough preexisting material in unmodified form such that it could be considered a derivative work or compilation as those terms are defined in statute and case law. *Id.* at 3, 5. As a result, 17 U.S.C. § 409(9)'s preexisting works disclosure requirement, which applies only to derivative works and compilations, did not apply to PalCare's applications for the Source Code. *Id.*

Defendants' reply brief argues its position is based on "PalCare's own admission" that the Source Code was developed using some open source code. ECF No. 81 at 4–6 (also characterizing the Geimer testimony as supporting a "plain reading" that PalCare developers "originally wrote only less than one percent" of the Source Code).[4] Defendants additionally cite the declaration of Tian Zhao ("Zhao"), their retained source code expert. Defendants say that Zhao opined based on his review of the Source

---

[4] The reply brief redacts the same portion of the Geimer deposition testimony that PalCare includes, unrestricted, in its opposition brief. *Compare* ECF No. 81 at 6 *with* ECF No. 68 at 4. While the reply brief applies other redactions that justify granting the motion to restrict, *see supra* note 2, it is not clear why that particular material is redacted. The Court sees no barrier to citing the material here.

Code that "PalCare did actually incorporate plenty of open source code, and some code copyrighted by others, into its works." *Id.* at 6 (citing Zhao declaration, ECF No. 83).

Turning briefly to PalCare's motion for leave to file a sur-reply: PalCare so moves because Defendants only submitted and cited to the Zhao declaration for the first time in their reply brief despite having disclosed Zhao as a retained expert witness back in December 2022. ECF No. 91 at 2. PalCare argues this was improper and prejudicial. *Id.* Defendants respond that the Zhao declaration merely "provided specific examples to counter [PalCare's] opposition arguments" and therefore including it in the reply brief was proper. ECF No. 93 at 1.

"New arguments and evidence may not be raised for the first time in a reply brief. . . . However, a party may expand upon and clarify arguments in its reply brief." *PSG Energy Grp., LLC v. Krynski*, No. 1:18CV03008TWPTAB, 2020 WL 2059944, at *3 (S.D. Ind. Apr. 29, 2020). "Where new evidence is presented in either a party's reply brief or affidavit in further support of its . . . motion, the district court should permit the nonmoving party to respond to the new matters prior to disposition of the motion . . . or else strike that new evidence." *Baugh v. City of Milwaukee*, 823 F. Supp. 1452, 1457 (E.D. Wis. 1993).

Defendants' theory of why the Court should grant their referral motion has, from the outset, been premised on the notion that the Source Code incorporated some amount of preexisting code that should've been disclosed, and it appears they have had what they characterize as hard evidence in support of that argument since well before they filed their motion. The Court sees no good reason why Defendants did not introduce this information in their opening brief, and it also does not see how

introducing directly relevant evidence in support of a key argument for the first time in a reply brief qualifies as merely "expand[ing] upon and clarify[ing] arguments" raised earlier. *PSG Energy*, 2020 WL 2059944, at *3. Defendants have the burden to prove that their § 411(b)(2) referral motion is factually justified, and their choice to submit an initial brief that omitted relevant factual material—material that they argue in their reply brief should be persuasive to the Court—is confounding.[5] Accordingly, to afford PalCare an adequate opportunity to respond to the factual basis for Defendants' referral motion, the Court in its discretion will grant PalCare's motion for leave to file a sur-reply in this respect. *See Baugh*, 823 F. Supp. at 1457.

The Court accordingly includes, and will consider in deciding this portion of the referral motion, the relevant content from the sur-reply. PalCare points out that Zhao's declaration, if accepted as true, identifies less than 0.33% of the Pal Base 3 Version 3.1.50 code as having been created in part using open source code, and it does not identify any open source code present in the Device Test Suite code. ECF No. 91-1 at 1–2. PalCare further argues that, even if the Source Code is considered a derivative work, the Copyright Office would likely not consider 0.33% to be an "appreciable"

---

[5] As discussed *supra* Section 2, both the Seventh Circuit and the out-of-circuit precedents that could apply to govern the referral standard require more than bare allegations, so any argument by Defendants that they initially believed they were required only to marshal allegations, rather than factual material in support of those allegations, would be a non-starter.

Similarly, the analysis would be the same even considering that Zhao was disclosed to PalCare months ago and perhaps PalCare itself might have raised Zhao's assessments, which it argues in its sur-reply should defeat Defendants' motion, as a counterargument in its opposition—PalCare does not have the burden of proof.

amount of previously existing material and thus would not require that material to be excluded from the application for copyright of the Pal Base 3 Version 3.1.50 code. *Id.* at 2 (citing and quoting U.S. Copyright Office, Compendium of U.S. Copyright Office Practices § 721.8 (3d ed. 2021), *available at* https://www.copyright.gov/comp3/ (hereinafter "Compendium")).[6]

Setting aside Defendants' unpersuasive quibbles as to the proper reading of Geimer's testimony,[7] at bottom, the record considered as a whole reflects that the parties do not dispute that some amount of preexisting and/or open source code was present in the Source Code, or at the very least in the Pal Base 3 Version 3.1.50 code, at the time of the applications. Indeed, PalCare's sur-reply concedes this point. The question then becomes, in effect, "so what?"—was PalCare legally required to disclose in its

---

[6]Excluding preexisting material from an application on a derivative work seems to be the flip side of identifying that material that is incorporated into the work. *See* Compendium § 721.8 ("If the program contains an appreciable amount of unclaimable material, the applicant should identify the material in the application and should exclude it from the claim [for copyright registration] . . . *See* 17 U.S.C. 409(9) [citing the requirement to identify preexisting work]. . . .").

[7]Defendants' argument that a "plain reading" of Geimer's testimony supports a conclusion that PalCare developers "originally wrote only less than one percent" of the Source Code strains credulity. The "less than 1 percent" quote viewed in context reflects that the question was unclear or that Geimer misunderstood it, or that Geimer did understand the question and was responding, somewhat unclearly, in his capacity as one of the individuals at PalCare who was familiar with and partially responsible for writing with the Source Code. His deposition testimony at other points is consistent with this reading. *See* ECF No. 69-1 at 10 (Geimer estimating that "[b]etween 1 and 5 percent" of event processing code "used or copied stuff over from open source code") and 14 ("Q. . . . . [W]hat percentage of the SQL database manager code would have been originally written by you without any use of open source code snippets? A. Probably 99 percent.").

applications for copyright registration that the Source Code included preexisting code?

The parties' briefing unfortunately does little to resolve this question. "A 'compilation' is a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." 17 U.S.C. § 101. PalCare argues that the Source Code could not possibly be a compilation because only a very small portion of open source code was used in development, and even that was modified—but offers no case law to explain why this work would definitively *not* be considered have been "selected, coordinated, or arranged" from "preexisting materials," even a small amount thereof.

Similarly,

[a] "derivative work" is a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted. A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a "derivative work".

*Id.* "In order for a work to be considered derivative, it must have been substantially copied from the prior work." *KnowledgeAZ, Inc. v. Jim Walters Res, Inc.*, 617 F. Supp. 2d 774, 789 (S.D. Ind. 2008). PalCare cites only one out-of-circuit case from 1976 for the black letter law and otherwise makes no attempt to analogize or distinguish case law with respect to what "substantially copied from" or "based on" might mean in the context of a

Case 2:22-cv-00217-JPS   Filed 04/13/23   Page 11 of 23   Document 95

software program that was developed using at least some portion of open source code. ECF No. 68 at 5.

The material PalCare cites from the Compendium is helpful but not dispositive. The Compendium, in a section titled "Copyrightable Authorship in a Derivative Computer Program," states that "[u]nclaimable material should be excluded only if that material is copyrightable and represents an appreciable portion of the work."[8] Compendium § 721.8. It does not define "appreciable" but provides by way of example that, where a computer program "contains 5,000 lines of entirely new source code and 50 lines that appeared in a previously published version of the same program," those 50 lines "do not represent an appreciable portion of the program code" for registration purposes. *Id.* However, the Compendium does not purport to create a bright-line rule that "appreciable" means 1% or more, and furthermore the example is not exactly on point, because there the author seeks to copyright a later version of the same program whereas here PalCare seeks to copyright a *distinct* software program from those open source programs on which it drew.[9]

The Court would generally agree that 0.33% is not a "substantial" or "appreciable" number in absolute terms, but finds it difficult to accept

---

[8]Open source code—or at least that code at issue here—appears to be both copyrightable, *see supra* note 3, and unclaimable, *see* Compendium Glossary (defining unclaimable material to include "copyrightable material that is not owned by the claimant named in the application").

[9]This example also veers dangerously close to undermining PalCare's argument that the Source Code cannot be considered a derivative program—if a hypothetical program that is constituted of 1% preexisting material would be a derivative program, why would the Source Code, which is allegedly constituted of 0.33% preexisting material, not be? What makes 1% substantial but 0.33% insubstantial?

PalCare's argument absent further analysis of what this figure means in the particular context presented by this case. Copyrighting of software that partially includes open source code and determining what qualifies a software program as a derivative work are relatively new questions, but instructive case law is not nonexistent. *See supra* note 3 (citing *Jacobsen v. Katzer*, 535 F.3d 1373); *see also, e.g., Bruhn NewTech Inc. v. United States*, 144 Fed. Cl. 755, 803–08 (2019) (examining whether uncopyrightable material constituted a substantial portion of software). For the avoidance of doubt: the Court is not making a finding that the Source Code is or is not a compilation or derivative work; it is simply saying that something beyond PalCare's say-so is required for the Court to accept its legal conclusions. But PalCare did not offer that when it had an opportunity to do so in its opposition brief.

Returning to the facts at bar: as noted above, the parties ultimately agree that some preexisting and/or open source code was included in the Source Code (or at least the Pal Base 3 Version 3.1.50 code). *If* the Source Code qualifies as a derivative work or compilation, this was required to be disclosed but wasn't, and PalCare as a result did include inaccurate information in the applications for the Source Code. Whether the Source Code so qualified is a subtlety on which the Register's expertise would be useful. *See* 17 U.S.C. § 701(b)(2) ("[T]he Register of Copyrights shall . . . [p]rovide information and assistance to . . . the Judiciary on national and international issues relating to copyright, other matters arising under this title, and related matters.").

Finally, Defendants' motion has sufficiently (but barely) alleged that PalCare *knowingly* included this alleged inaccuracy. *See* 17 U.S.C. § 411(b)(1)(A). "Lack of knowledge of either fact or law can excuse an

inaccuracy in a copyright registration." *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 595 U.S. ___, 142 S. Ct. 941, 945 (2022). "But courts need not automatically accept a copyright holder's claim that it was unaware of the relevant legal requirements of copyright law." *Id.* at 948.

Defendants argue that PalCare's knowledge is demonstrated by its admission in an interrogatory that "portions of PalCare's source code contain or comprise open source code[.]" ECF No. 36 at 7 (quoting ECF No. 36-3 at 15 (PalCare's Objections and Responses to Defendants' First Set of Interrogatories)). Standing alone, PalCare's discovery response during the course of litigation is not especially probative of its knowledge at the time it submitted the applications. More relevant is Defendants' speculation that "[i]f PalCare had reviewed its source code at all before filing its copyright applications, it would have seen at least the copyright notices of other companies and known that the source code incorporated others' existing code[.]" ECF No. 81 at 7. The Court agrees that it is reasonable to assume that PalCare reviewed the material on which it sought a copyright before submitting the application; PalCare likely would have wanted to ensure the code itself was functional and presentable and to assure the copyright application thereon would comply with legal requirements.

PalCare, relying on *Unicolors*, argues it is excused from this inaccuracy because it made a good faith mistake of law or fact. ECF No. 68 at 9. But this bare assertion asks the Court to accept without evidence either that PalCare reviewed the Source Code but in that review did not become aware that it included open source code, or that PalCare did so *and* did in fact grapple with and come to a reasoned conclusion on the question of whether the Source Code was a compilation or derivative work triggering the preexisting-work disclosure requirement. *See Unicolors*, 142 S. Ct. at 948.

This is not a case where legal developments that clarified the copyright holder's legal responsibilities came only after the application was submitted. *Id.* at 947 ("If Unicolors was not aware of the legal requirement that rendered the information in its application inaccurate, it did not include that information in its application with the knowledge that it was inaccurate." (citation and quotation marks omitted)). The Compendium and the two cases cited above (and likely more) were available to PalCare and its attorneys before it submitted the applications in February 2022. *See* ECF No. 36 at 2 (indicating registration effective dates). And, as noted, it is reasonable to assume that PalCare reviewed the Source Code before submitting its application. Thus, the Court cannot at this juncture conclude that PalCare's failure to indicate that the Source Code included preexisting and/or open source code was due solely to a good-faith mistake of law or fact.

Accordingly, the Court will grant Defendants' referral motion as to this issue. The Court will request that the Register render an opinion on the following question:

> Whether the Source Code can be considered a compilation or derivative work within the meaning of 17 U.S.C. §§ 401 and 409(9); and if so, whether PalCare's failure to disclose in its applications that the Source Code included some portion of preexisting and/or open source code would have caused the Register to refuse the applications.

### 3.2    Authorship

Next, Defendants argue that both components of the Source Code were registered as "works for hire" and improperly identified only PalCare as the author of the Source Code. ECF No. 26 at 8–10. At least three developers—Geimer, Tim Davis, and Terry Staiduhar—worked on the code

Case 2:22-cv-00217-JPS   Filed 04/13/23   Page 15 of 23   Document 95

as third-party contractors but, Defendants argue, did not have work for hire agreements with PalCare that met the applicable legal standards. *Id.*; ECF No. 81 at 9–10. As a result, these three individuals should have been listed as authors on the Source Code application registrations, but were not, and this misidentification of authorship constitutes a knowing inaccuracy, justifying referral to the Register. ECF No. 36 at 10; ECF No. 81 at 11.

"Copyright in a work . . . vests initially in the author or authors of the work." 17 U.S.C. § 201(a). "In the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author . . . unless the parties have expressly agreed otherwise in a written instrument signed by them[.]" 17 U.S.C. § 201(b). "A 'work made for hire' is . . . a work specially ordered or commissioned for use . . . as a compilation [or other uses], if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire." 17 U.S.C. § 101.

In the case of a work made for hire, "the parties [must] have agreed in a writing signed by both that the person who commissioned the creation of the property is the owner. The writing must precede the creation of the property in order to serve its purpose of identifying the (noncreator) owner unequivocally." *Schiller & Schmidt, Inc. v. Nordisco Corp.*, 969 F.2d 410, 413 (7th Cir. 1992). At least one court has held that the written agreement should "expressly define" the work being created and identify it as a work made for hire. *See Recht v. Metro Goldwyn Mayer Studio, Inc.*, 580 F. Supp. 2d 775, 783 (W.D. Wis. 2008). These requirements "make the ownership of property rights in intellectual property clear and definite[.]" *Schiller*, 969 F.2d at 412.

PalCare argues in opposition that Geimer, Davis, and Staiduhar had third party contracts with SEEK Professionals, LLC (but later became employees of PalCare) and in those written contracts assigned their rights in the Source Code to PalCare.[10] ECF No. 68 at 5–8. Defendants counter that only certain types of work—including compilations, which PalCare has said the Source Code is *not*—can qualify under 17 U.S.C. § 101 as works made for hire and that, in any event, PalCare's agreements with Geimer, Davis, and Staiduhar were legally insufficient. ECF No. 81 at 8–9. Specifically, the agreements did not explicitly identify the Source Code as the work being created or that it was being created as a work made for hire, nor were the agreements signed between the parties (rather, they were agreements between the developers and a third party, SEEK), nor in Geimer's case was the agreement signed before the work was created. *Id.* at 9–10. As to the knowledge requirement, Defendants argue that PalCare continued to identify Geimer, Davis, and Staiduhar among the authors of one or both components of the source code in their discovery responses. *Id.* at 10–11.

PalCare's sur-reply does not respond to these defects in kind, but rather states that, after reviewing Defendants' reply brief, it "has submitted supplementary registrations with the Copyright Office to identify

---

[10]PalCare dispenses quickly with Defendants' argument that PalCare never produced any written agreements with Geimer, Davis, and Staiduhar, stating that it did so "prior to the filing of Defendants' motion." ECF No. 68 at 6. Defendants offer no explanation for this oversight, AND proceed in their reply brief to argue that the terms of the written agreements are legally deficient.

As a result, PalCare requests leave to file a sur-reply to respond to these arguments Defendants have raised for the first time in their reply brief. ECF No. 91 at 3. The Court will grant that request, *Baugh*, 823 F. Supp. at 1457, and discusses the content of PalCare's sur-reply below.

(1) Timothy Davis, Terry Staiduhar, and Tod Geimer as authors for Pal Base 3 version 3.1.50 and (2) Timothy Davis and Terry Staiduhar as authors for Device Test Suite." ECF No. 91-1 at 3. PalCare argues that its supplementary submission moots Defendants' arguments that its representations of authorship on the applications were inaccurate. *Id.* PalCare further argues that its efforts to correct the record now demonstrate that it made a good-faith mistake of law at the time it submitted the applications, precluding any argument its misstatement as to authorship was knowing. *Id.* at 4.[11]

The Court finds that, based on these facts, Defendants have met their burden to show that the applications misstated the authorship of the Source Code by excluding Geimer, Davis, and Staiduhar as authors. Although Defendants' argument turns on technicalities about the written instruments between these three developers and PalCare, courts such as the Seventh Circuit in *Schiller* and the Western District of Wisconsin in *Recht* have made clear that those technicalities matter. In this case, those technicalities were not met.

The Court also finds that PalCare's failure to comply with clear statutory language demonstrates "willful blindness" and therefore knowledge of the inaccuracy. *Unicolors*, 142 U.S. at 948. In contrast with the

---

[11]On April 7, 2023, PalCare filed an expedited motion for leave to file a Notice of Copyright Action. ECF No. 94. PalCare argues that submitting the Notice is necessary because it may bear on resolution of the instant motions. *Id.* The Notice indicates that the Copyright Office will not resolve PalCare's supplementary registration application until the Court has resolved the instant motion. ECF No. 94-1 at 2; *see also* Compendium § 1802.9(G) (stating the same). PalCare argues that this is a good reason to deny the referral motion. ECF No. 94-1 at 2–3. The Court does not concur in that point and will deny PalCare's motion as moot because the essential information on this point is already otherwise in the record, in PalCare's own sur-reply.

rather murky state of the case law as to what qualifies as a derivative work or compilation, *see supra* Section 3.1, here the statutory language set out clear requirements PalCare had to meet in order to lawfully characterize the Source Code as work made for hire. It is thus harder to accept that PalCare made a good-faith mistake of law in failing to execute proper work for hire agreements with the three developers. Although the Court appreciates that PalCare seemingly now wants to correct its error, its efforts come too late when the applicable requirements were clearly laid out in statute before the applications were submitted. The Register may still, of course, find that the initial misidentification of authorship was immaterial and proceed to accept PalCare's supplementary registrations, but that is for the Register to decide.

Accordingly, the Court will grant Defendants' referral motion in this respect. The Court will request that the Register render an opinion on the following question:

> Whether PalCare's failure to name Tod Geimer, Timothy Davis, and/or Terry Staiduhar as authors of the Source Code would have caused the Register to refuse the applications.

### 3.3    Publication Date

Finally, Defendants argue that PalCare included an incorrect publication date in its registration of the Pal Base 3 Version 3.1.50 code. "[I]f the work [sought to be copyrighted] has been published," the application for copyright registration must indicate "the date and nation of its first publication." 17 U.S.C. § 409(8).

The registration application for the Pal Base 3 Version 3.1.50 code identified its date of publication as August 4, 2020, but PalCare's interrogatory responses to Defendants identify among the "branches" of this code four branches that only came into existence later than that date.

Case 2:22-cv-00217-JPS   Filed 04/13/23   Page 19 of 23   Document 95

ECF No. 36 at 10. As such, the Pal Base 3 Version 3.1.50 code could not logically have been published on that date—either that, or what PalCare produced and identified in discovery as the Pal Base 3 Version 3.1.50 code is some other version of the code that is different than what was submitted to the Copyright Office. *Id.* at 11. PalCare acknowledges that these branches of the code indeed did not exist on August 4, 2020, but counters that Defendants' suspicion is misplaced because PalCare simply identified these branches as those that existed as of the date of the discovery request (in October 2022). ECF No. 68 at 8. PalCare states it has since corrected its interrogatory response. *Id.*

Defendants reply that PalCare's explanation of mere inadvertence is unpersuasive because the original interrogatory request specifically asked PalCare to identify all branches of the version of the Pal Base 3 code that was copyrighted and is the subject of this litigation. ECF No. 81 at 11 (quoting Notify's First Set of Interrogatories). Beyond questioning PalCare's sincerity, Defendants argue that what PalCare produced and identified in discovery as the Pal Base 3 Version 3.1.50 code (*and* the Device Test Suite code, although Defendants made no argument its publication date was inaccurately described) is substantively different than the code PalCare deposited with the Copyright Office. *Id.* at 12 ("Both deposits submitted to the copyright office . . . contain[] more lines of code than any files found in their respective supposed counterparts of PalCare's produced versions . . . ." (citing Zhao declaration)).[12] PalCare's sur-reply states simply

_____

[12] Again, PalCare requests to file a sur-reply because Defendants raised a new argument—that it did not properly deposit the Source Code with the Copyright Office—in reply. ECF No. 91 at 3. The Court concurs. Defendants hinted vaguely in their opening brief at their belief that the Source Code produced in discovery might not be the same as what was deposited with the Copyright Office,

that the alleged discrepancies between the produced and deposited versions of the Source Code are not discrepancies at all, but rather, reflect that the deposited versions—consistent with Copyright Office guidance on submitting code containing trade secrets—contain only a portion of the entire code. ECF No. 91 at 4–5.

Unlike the prior two issues, Defendants' theory of the alleged inaccuracy here lacks substance and is best described as paranoid. In view of the relevant documents, the Court trusts that PalCare's initial interrogatory resulted from a misreading of Defendants' rather muddled request, and that PalCare made the recent correction in good faith. *See* ECF No. 82-3 at 2, 6 (defining "Pal Base 3 code" by incorporating a specific paragraph in the Complaint, but not producing that language from the Complaint, and on a separate page asking PalCare to "[i]dentify all branches of the Pal Base 3 code" without specifying a time frame). Moreover, Defendants' argument that the produced and deposited versions of the Source Code are different is unavailing because PalCare adequately explains the discrepancy. Accordingly, Defendants' referral motion will be denied with respect to this alleged inaccuracy.

### 4. CONCLUSION

The Court finally notes that, given that the trial date in this case has been adjourned and has not been reset, trial-delay concerns are no longer a barrier to granting Defendants' referral motion. *See DeliverMed*, 734 F.3d at 624–25. It does bear mentioning that this *was* a consideration when Defendants originally submitted their motion less than a month before trial,

---

but they adduced no factual basis for this allegation despite having access to the evidence (Zhao's assessments) they now argue proves their claim. PalCare will be permitted to respond in sur-reply.

which did not leave enough time for the motion to brief out and become ripe for adjudication, *see* Civ. L.R. 7(b)(c), let alone for it to be submitted to and considered by the Register. However, lagging discovery and motion practice has been a global problem in this litigation, not cabined solely to Defendants' conduct—for example, PalCare did not produce its copyright registration certificates until February 3, 2023, despite knowing since April 2022 they would be relevant to Defendants' answer and counterclaim. *See* ECF Nos. 81 and 10. There's plenty of blame to go around for delay in this case, and at this time, concerns about delay do not counsel against granting the referral motion.

Therefore, for the reasons stated in this Order, the Court refers the two above-stated questions to the Register for an opinion as to their materiality. 17 U.S.C. § 411(b)(2); *DeliverMed*, 734 F.3d at 625.

Accordingly,

**IT IS ORDERED** that Defendants Lucas Narbatovics and Notify LLC's motion for referral of this matter to the Register of Copyrights, ECF No. 35, be and the same hereby is **GRANTED in part and DENIED in part** as stated herein;

**IT IS FURTHER ORDERED** that the Court **REQUESTS** the Register of Copyrights to render an opinion on the two questions stated herein within **ninety (90) days** of the date of this Order;

**IT IS FURTHER ORDERED** that Plaintiff PalatiumCare, Inc.'s motion for leave to file a sur-reply, ECF No. 91, be and the same hereby is **GRANTED**; the proposed sur-reply, ECF No. 91-1, will remain docketed and serve as the operative sur-reply in this matter;

**IT IS FURTHER ORDERED** that Defendants Lucas Narbatovics and Notify LLC's unopposed motion to restrict, ECF No. 85, be and the

same hereby is **GRANTED**; the documents that are the subject of that motion will remain restricted until further order of the Court; and

      **IT IS FURTHER ORDERED** that Plaintiff PalatiumCare, Inc.'s expedited motion for leave to file a Notice of Copyright Office Action, ECF No. 94, be and the same hereby is **DENIED as moot**.

      Dated at Milwaukee, Wisconsin, this 13th day of April, 2023.

BY THE COURT:

_____

J. P. Stadtmueller
U.S. District Judge